# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| STACEY ADAMS, | CIVIL ACTION |
| JERRY SAINT VIL, on behalf of themselves and others similarly situated, | NO. 1:17-cv-02813-WSD |
| Plaintiffs, | AMENDED COMPLAINT - CLASS ACTION |
| v. | JURY TRIAL DEMANDED |
| SENTINEL OFFENDER SERVICES, LLC, | |
| MARK CONTESTABILE, Chief Business Development Officer, Sentinel Offender Services, LLC, | |
| TIM LEWIS, Vice President of Georgia Services, Sentinel Offender Services, LLC, | |
| STEVE QUEEN, Director of Georgia Services, Sentinel Offender Services, LLC, | |
| Defendants. | |

## AMENDED COMPLAINT

Plaintiffs Stacey Adams and Jerry Saint Vil, on behalf of themselves and the class alleged herein, state as follows for their Amended Complaint:

# I.    **PRELIMINARY STATEMENT**

1.      This is an action to compel Defendants, a private probation company and its executives, to return money they illegally collected from people sentenced to "pay-only" probation for ordinance violations or misdemeanors adjudicated in the Atlanta Municipal Court.  As described below, Defendants required Plaintiffs and hundreds or thousands of others to pay the company an illegal $20 "enrollment fee" that was not ordered by any court, permitted by statute, or authorized by the Defendants' contract with the Atlanta Municipal Court.

2.      "Pay-only" probation refers to the practice of sentencing people to probation solely because they cannot pay their fines and surcharges at the time they are sentenced.  O.C.G.A. § 42-8-103(a).

3.      Defendants are Sentinel Offender Services, LLC ("Sentinel"), a private corporation that oversees misdemeanor probationers for profit, and three of the company's executives.  From 2006 to 2017, Sentinel had a contract with the Atlanta Municipal Court to supervise people on probation, including people sentenced to pay-only probation because they could not afford to pay a fine.

4.      Plaintiff Stacey Adams is a 33-year-old working mother who appeared before the Atlanta Municipal Court in July 2015 and pleaded guilty to making an improper u-turn.  She was sentenced to pay a fine and fees totaling

$215.25.  Because Adams could not afford to pay that amount on the day she appeared in court, she was sentenced to pay-only probation.  As a result, the court ordered her to pay Sentinel $81 in "supervision fees," plus $27 that would be passed on to the state, for a total of $108, in addition to the $215.25 fine and fees.

5.      Though the Municipal Court had authorized Sentinel to collect $108, Sentinel also made Adams pay a $20 "enrollment fee," without any lawful basis for doing so.  Sentinel required that Adams pay the fee before the company would close her case by informing the court that she had complied with its sentence.

6.      Plaintiff Jerry Saint Vil is a student and father of two who was sentenced to pay-only probation for traffic tickets between January 2015 and December 2016.  On three separate occasions, Saint Vil was required to pay unlawful $20 "enrollment fees" before Sentinel would close his case.

7.      Adams and Saint Vil expect to show that Sentinel forced hundreds and perhaps thousands of people to pay unauthorized "enrollment fees."

8.      Plaintiffs expect to show that Sentinel established its illegal policy sometime between January 2013 and January 2015, and then continued enriching itself at the expense of low-income people until the company's departure from the Atlanta Municipal Court in January 2017.  Sentinel continued the practice even after being informed by state regulators that such fees were unauthorized.

9.     The enrollment fees were illegal for three reasons.

10.     First, no court ordered the fees, and Sentinel's contract did not permit the fees.  Although the January 2013 contract between Sentinel and the Atlanta Municipal Court allowed the company to collect a one-time $20 "administrative fee" if a person on pay-only probation managed to pay off his fines within 30 days of being sentenced, Sentinel never had authority to collect such a fee from people who, like Adams and Saint Vil, were *not* able pay off their fines within the first 30 days of pay-only probation.  Nor did the contract allow Sentinel to demand a $20 "enrollment fee" from every single person sentenced to pay-only probation.[1]

11.     Second, no Georgia statute authorized the imposition of such a fee. *See Smith v. State*, 526 S.E.2d 59 (Ga. 2000) ("the only costs which may be imposed on a criminal defendant are those which are specifically authorized by statute").

12.     The third reason applies to some cases, but not all, that were adjudicated in the Atlanta Municipal Court on or after July 1, 2015, including

---

[1] In most documents, Sentinel refers to the $20 fee as an "enrollment fee," but in others, it is described as an "administrative fee."  For clarity's sake, this complaint will consistently refer to "enrollment fees," unless quoting a source that uses the other term.

Adams's case and one of Saint Vil's.  On that date, a new statute barred Sentinel from collecting additional fees once a pay-only probationer had paid three of Sentinel's ordinary, court-approved monthly supervision fees.  The statute was part of a legislative overhaul intended to address "problems plaguing the misdemeanor probation system."  *See Report of Ga. Council on Crim. Justice Reform* (2015), 21–26, http://bit.ly/2sgH6IN (visited June 15, 2017).

13.     In August 2016, the Department of Community Supervision (DCS), the state agency that regulates probation companies, informed Sentinel that it could not collect an extra $20 from people who needed more than 30 days of pay-only probation to pay fines owed to the Atlanta Municipal Court.

14.     DCS instructed Sentinel to consult with the Atlanta Municipal Court to "see if refunds are appropriate."  Instead, Defendants Mark Contestabile and Tim Lewis unsuccessfully tried to convince the judges of the Atlanta Municipal Court to ratify Sentinel's unlawful conduct.  Sentinel nevertheless continued to collect the illegal fees from low-income probationers.

15.     In January 2017, Sentinel ceased operations at the Atlanta Municipal Court and was replaced by another company.  Sentinel had declined the chance to renew its Atlanta contract, explaining to the court that operations in Atlanta were not profitable enough.

16.     On February 20, 2017, Sentinel sold the rest of its Georgia probation contracts to another probation company.  After the sale, the Department of Community Supervision took no further regulatory action against Sentinel.

17.     Sentinel never returned the funds illegally collected from Plaintiffs.

18.     Defendants' policy of extracting unauthorized fees from low-income defendants under color of law violates the United States Constitution and the Constitution of the State of Georgia.  Plaintiffs assert claims for violations of their civil rights under 42 U.S.C. § 1983.

19.     Defendants' policy violated Georgia law prohibiting the collection of costs from criminal defendants unless the costs are specifically authorized by statute.  Defendants' policy violated Georgia's statutory framework for private probation, as well as a specific statute enacted in 2015 to protect pay-only probationers.  Defendants' policy also constituted the torts of negligent supervision and negligent misrepresentation under Georgia law, as well as unjust enrichment.

20.     Plaintiffs ask this Court to order the Defendants to return money they wrongfully collected from Plaintiffs and other putative class members.

21.     Because Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Plaintiffs' rights, they should be punished and deterred by an award of punitive or enhanced damages against all

Defendants as permitted by law.

22.     Plaintiffs bring this action on behalf of themselves and all persons

who paid Sentinel's unlawfully imposed "enrollment fees" on or after July 25,

2013.  This putative class is further described below in ¶¶ 32–37.

## II.     JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1331 and § 1343(a)(3) and (4) because the action arises under 42

U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

24.     This Court has supplemental jurisdiction over state law claims under

28 U.S.C. § 1367 because they are so related to the federal claims that they form

part of the same case or controversy under Article III of the United States

Constitution.

25.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because

all or a substantial part of the events or omissions giving rise to the claims asserted

occurred in this judicial district.

## III.     PARTIES

**A.     Plaintiffs**

26.     Plaintiff Stacey Adams is a 33-year-old woman who resides in Atlanta

and is raising a daughter.  In July 2015, Adams pleaded guilty in the Atlanta
Municipal Court to making an improper u-turn, O.C.G.A. § 40-6-121, which is a
misdemeanor under Georgia law pursuant to O.C.G.A. § 40-6-1(a).

27.     Plaintiff Jerry Saint Vil is a 33-year-old man who resides in Atlanta
and is raising a son and a daughter.  On separate occasions between January 2015
and August 2016, Saint Vil pleaded guilty in the Atlanta Municipal Court to failure
to obey a traffic control device, O.C.G.A. § 40-6-20; failure to maintain lane,
O.C.G.A. § 40-6-48; and, twice, to following too closely, O.C.G.A. § 40-6-49.
Each is a Georgia misdemeanor, per O.C.G.A.§ 40-6-1(a).

## B.     Defendants

28.     Defendant Sentinel Offender Services, LLC, is a Delaware company
that, at all times relevant to this action, did business in the State of Georgia, in this
district, and in this division.  During the relevant period, Sentinel performed a
public function that was traditionally the exclusive prerogative of the state—
supervision of people on probation.  Sentinel had a contract with the Atlanta
Municipal Court, which has the authority under Georgia law to outsource this

public function to private companies operating for profit.[2]  O.C.G.A. § 42-8-101(b)(1).  Sentinel is a state actor and a person acting under color of state law, and thus liable under 42 U.S.C. § 1983.

29.    Defendant Mark Contestabile is the Chief Business Development Officer and a Vice President of Sentinel Offender Services, LLC, as well as a part-owner of the company.  He resides in Georgia.  Contestabile directed the behavior of "private probation officers," employees of Sentinel who were performing a public function.  O.C.G.A. § 42-8-101(b)(1).  Contestabile caused, authorized, condoned, ratified, approved, and knowingly participated in a longstanding policy and practice of demanding $20 "enrollment fees" from pay-only probationers who needed more than 30 days to pay off fines owed to the Atlanta Municipal Court, without the court's authorization or any other legal basis for doing so.  As part-owner of Sentinel Offender Services, LLC, he has retained and benefited from the collection of illegally collected funds.  At all times pertinent to this action, he was acting under color of state law.

---

[2] The parties to the contract were Sentinel and the City of Atlanta, on behalf of the Atlanta Municipal Court.  The contract was signed by the Mayor of Atlanta, as well as then-Chief Judge Crystal Gaines, and Defendant Mark Contestabile was listed as Sentinel's authorized representative.  For simplicity's sake, the contract is referred to herein as a contract between Sentinel and the Atlanta Municipal Court.

30.     Defendant Tim Lewis is the Vice President of Georgia Services for Sentinel Offender Services, LLC.  He resides in Georgia.  Lewis directed the behavior of "private probation officers," who were performing a public function. O.C.G.A. § 42-8-101(b)(1).  Lewis caused, authorized, condoned, ratified, approved, and knowingly participated in a longstanding policy and practice of demanding $20 "enrollment fees" from pay-only probationers who needed more than 30 days to pay off fines owed to the Atlanta Municipal Court, without the court's authorization or any other legal basis to do so.  At all times pertinent to this action, he was acting under color of state law.

31.     Defendant Steve Queen is the Director of Georgia Services for Sentinel Offender Services, LLC.  He resides in Georgia.  Queen directed the behavior of "private probation officers," who were performing a public function. O.C.G.A. § 42-8-101(b)(1).  Queen caused, authorized, condoned, ratified, approved, and knowingly participated in a longstanding policy and practice of demanding $20 from pay-only probationers who needed more than 30 days to pay off fines owed to the Atlanta Municipal Court, without the court's authorization or any other legal basis to do so.  At all times pertinent to this action, he was acting under color of state law.

## IV.   CLASS ACTION ALLEGATIONS

32.    Plaintiffs brings this class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and a class of similarly situated persons.

33.    The class is defined as all persons who (1) were sentenced by the Atlanta Municipal Court to pay-only probation under the supervision of Sentinel Offender Services after July 25, 2013; (2) were unable to pay off their court-ordered fines within 30 days of having been sentenced; and (3) were nevertheless required to pay a $20 "enrollment fee."

34.    Plaintiffs meet the requirements of Rule 23(a) in that:

(a)    The class is so numerous that joinder of all members is impracticable.  Plaintiffs expect to show that the class consists of hundreds, and possibly thousands, of people who paid Sentinel's illegal fee.[3]  During 2016, Sentinel supervised an average of 5,000 pay-only probationers every quarter.  Plaintiffs expect to show that a significant portion of these people—who

---

[3] Defendants possess and control electronic records necessary to easily identify class members and determine the size of the class.

were on probation only because they could not pay their fines immediately—needed more than 30 days to pay off those fines, and were therefore charged illegal enrollment fees by Sentinel.[4]

(b)     There are questions of law and fact common to the class. The common questions of law include (1) whether Sentinel's policy of charging probationers "enrollment fees" not authorized by order of the Atlanta Municipal Court violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution; (2) whether Sentinel's practice of charging probationers such fees violates Georgia statutes that govern probation companies and protect pay-only probationers; and (3) whether such conduct constitutes negligent misrepresentation, negligent supervision, and/or unjust enrichment under Georgia law. Common questions of fact include whether Sentinel's contract with the Atlanta Municipal

---

[4] The limited records currently available to Plaintiffs suggest that Defendants collected a quarterly average of $55,000 in "enrollment fees" from Atlanta pay-only probationers every three months, for least part of the time period relevant to this action. *See* Ex. A (Sentinel financial reports to the Atlanta Municipal Court, fourth quarter 2015 and second quarter 2016).

Court authorized Sentinel to charge the class members "enrollment fees."

(c)     The policy challenged in this action applies with equal force to the named Plaintiffs and all members of the class so that the claims of the Plaintiffs are typical of those of the class. All class members have paid the same $20 fees, whether in one case or in multiple cases; all such fees were collected in violation of law, and unjustly enriched Sentinel Offender Services.

(d)     The named Plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs possess the requisite personal interest in the subject matter of the lawsuit and possess no interests adverse to other class members. Plaintiffs are represented by attorneys at the Southern Center for Human Rights, a nonprofit organization, and Caplan Cobb, a law firm. Plaintiffs' counsel have extensive experience in complex class action litigation. Plaintiffs' counsel have the resources, expertise, and experience to effectively prosecute this action.

35.     Plaintiffs meet the requirements of Rule 23(b)(3) because common

13

questions of law and fact predominate over questions affecting individual class members.  Indeed, the claims of the putative class members are essentially identical: Defendants charged each one the same fee, which was unlawful every time.  This is true even though some class members may have been required to pay the fee more than once, in connection with multiple cases at the Atlanta Municipal Court, as is the case with Plaintiff Jerry Saint Vil.

36.     A class action is superior to any other method of adjudicating this dispute because hundreds or thousands of people paid unauthorized fees demanded by Defendants, and few are likely to have the time, legal acumen, and resources to pursue a reimbursement of these costs on their own.

37.     In the absence of a class action, Sentinel will be permitted to keep money exacted from class members tortiously and in violation of their constitutional rights.

## V.     <u>STATEMENT OF FACTS</u>

### A.     "Pay-Only" Probation in Georgia

38.     The Georgia Code allows municipal courts to contract with private companies to supervise people sentenced to probation for certain misdemeanors, including traffic violations, and for violations of municipal ordinances.

14

O.C.G.A. § 42-8-101(b)(1).

39.     The courts do not pay these for-profit companies to supervise

probationers.  Instead, private companies enter contracts that "require the payment

of a probation supervision fee" by each person on probation.  O.C.G.A. § 42-8-

102(c).  These fees are collected by probation companies directly from

probationers, and are retained by the probation companies.

40.     Georgia courts also sentence people to "pay-only probation," which

"means [when] a defendant has been placed under probation supervision solely

because such defendant is unable to pay the court imposed fines and statutory

surcharges when such defendant's sentence is imposed."  O.C.G.A. § 42-8-103(a).

Additionally, traffic violations and many other low-level offenses are criminalized

as misdemeanors, rather than civil infractions.[5]

41.     The widespread use of pay-only probation, in lieu of some other kind

of payment plan, means that a low-income person in Georgia will usually pay a

---

[5] As a result of these policies, Georgia has a higher rate of people on probation
than any other state, *and* the highest number of people on probation, in absolute
terms.  *See* Bill Rankin, "Georgia Justice Reformers: Cut the Number of Offenders
on Probation — State's Rate is Almost Four Times the National Average," *Atlanta
Journal-Constitution*, Feb. 23, 2017, available at http://bit.ly/2l3h46T (accessed
July 18, 2017); U.S. Department of Justice, Bureau of Justice Statistics, "Probation
and Parole in the United States, 2015" at 16, available at
www.bjs.gov/content/pub/pdf/ppus15.pdf (accessed July 18, 2017).

greater amount than a wealthy person would for the same offense.

42.     Pay-only probation is unlike other methods of collecting fines because it involves the imposition of a probated jail sentence, and it allows the debtor to be jailed, with limited procedural safeguards, for failing to pay.

43.     At the time of the events relevant to this complaint, Sentinel Offender Services was likely the largest probation company in the nation.  Sentinel was a party to contracts authorizing the company to supervise people on probation in over 70 courts throughout the State of Georgia.

44.     From 2006 to 2017, Sentinel supervised people who were sentenced to probation by the Atlanta Municipal Court, which has jurisdiction over certain misdemeanors and violations of municipal ordinances.  *See* O.C.G.A. § 36-32-1.

**B.     Sentinel's Narrow Authority to Collect Fees from People Sentenced to Probation for Inability to Pay**

### *i.     Georgia's Statutory Framework*

45.     Under Georgia's statutory framework for private probation, courts may contract with private companies that offer "collection services" of moneys to be paid "according to the terms of the sentence imposed . . . [and] any moneys which by operation of law are to be paid . . . in consequence of the conviction." O.C.G.A. § 42-8-101(b)(1).  This provision defines the scope of moneys that a

private probation company may legally demand from people under its supervision.

46.     State regulations further provide that "[n]o probation entity shall assess, collect, or disburse any funds as it pertains to the collection of court-ordered monies, except by written order of the court or as required by State law." Ga. Comp. R. & Regs. 503-1-.30.[6]

47.     The most recent contract between Sentinel and the Municipal Court of Atlanta was executed on January 29, 2013.  (Ex. B.)

48.     The contract's fee schedule limited the fees that Sentinel could collect from people on probation.  (*Id.* at 33–36.)[7]  This fee schedule was incorporated by reference into the contract as a whole.  (*Id.* at 3 (¶¶ 1.1, 1.2); *id.* at 26 (§ 6)).

---

[6] This regulation was in force at all times relevant to this action.  On February 14, 2017, new probation regulations came into effect.  The equivalent of old Rule 503-1-.30 appears at new Ga. Comp. R. & Regs. 105-2-.15, with an amendment indicated here by italics: "No probation entity or individual shall assess or collect from a probationer or disburse any funds, except as authorized by written order of the court, *as authorized by the written service agreement*, or as required by State law."  Ga. Comp. R. & Regs. 105-2, http://rules.sos.state.ga.us/gac/105-2 (accessed July 18, 2017).  In any event, the challenged fees would also be unlawful under the amended regulation.

[7] All exhibit pin-cites refer to pages of that exhibit's PDF, including the exhibit's cover sheet.

49.     Therefore, the contract states that:

> The court order directs the probationer to pay a monthly supervision fee to Sentinel in an amount approved by the Court and specified in the contract.  A probationer is *never charged more than the contract amount.*

(*Id.* at 34) (emphasis added).

50.     This provision is followed immediately by a table listing the monthly supervision fees that Sentinel was legally authorized to collect.  The table outlines three escalating "Supervision Levels," each with a higher monthly supervision fee. People sentenced to pay-only probation were classified as Level 1, and required to pay a fee of $27 per month.  Those sentenced to the highest level, Level 3, would be required to pay $35 per month.  (*Id.* at 34; *see also id.* at 26).

51.     The fee schedule contains the following proviso, marked with an asterisk: "For Level 1 [pay-only] cases, *if* all fines are paid within the first thirty (30) days of supervision, only a one-time administrative fee of $20.00 will be assessed."  (*Id.* at 34) (emphasis added).

| Supervision Level | Cost |
|---|---|
| Level 1 – Financial Services (Pay Only)<br>* = For Level 1 cases, if all fines are paid within the first thirty (30) days of supervision, only a one-time administrative fee of $20.00 will be assessed. | $27.00 per month * |
| Level 2 – Compliance Services (Conditions Cases) | $32.00 per month |
| Level 3 – Intensive Probation Supervision | $35.00 per month |

18

52.    This provision of the contract authorized Sentinel to collect a "one-time administrative fee" if and only if a pay-only probationer paid her entire fine within 30 days of sentencing—thus terminating supervision, and depriving Sentinel of the revenue it could collect if she had stayed on probation for a longer period of time.  No other provision of the contract authorized, discussed, or contemplated a $20 "administrative fee" or "enrollment fee."

### ii.    *Statutory Limitations Imposed by H.B. 310 in 2015*

53.    On July 1, 2015, a new Georgia statute, O.C.G.A. § 42-8-103, came into effect.  The statute had been enacted as part of a reform bill known as H.B. 310, a legislative overhaul intended to address "problems plaguing the misdemeanor probation system."  *See Report of Ga. Council on Crim. Justice Reform*, 21–26 (2015), available at http://bit.ly/2sgH6IN (visited June 15, 2017).

54.    New O.C.G.A. § 42-8-103 imposed limitations on how much money pay-only probationers could be ordered to pay to a probation company.  As a result, the statute further restricted the situations in which Sentinel could lawfully collect revenue in pay-only cases.  In relevant part, Section 42-8-103 provides that:

> When pay-only probation is imposed, the probation supervision fees shall be capped so as *not to exceed three months of ordinary probation supervision fees* notwithstanding the number of cases for

which a fine and statutory surcharge were imposed or that the
defendant was sentenced to serve consecutive sentences.

O.C.G.A. § 42-8-103(b) (emphasis added).

55.     From 1993—when Sentinel began contracting to supervise
probationers in Georgia—until July 1, 2015, Georgia law imposed no such
restriction.  A person sentenced to pay-only probation to pay off a single
misdemeanor fine could be required to pay a company's supervision fees for up to
a year.  For pay-only probationers whose cases were adjudicated in the Atlanta
Municipal Court, twelve months of supervision fees and state fees would cost
$528, in addition to the fine itself.

56.     Until July 1, 2015, a person sentenced to consecutive one-year terms
of misdemeanor pay-only probation could be ordered to pay Sentinel's supervision
fees for as many years as it took her to pay off all the fines, or until the sentences
expired.  *See* O.C.G.A. § 17-10-10 (judicial authority to sentence defendants to
consecutive or concurrent terms).

57.     This long-term revenue source ended once Georgia enacted O.C.G.A.
§ 42-8-103 as part of the H.B. 310 reform bill.  The law had a significant impact on
the revenues that Sentinel was able to collect from the approximately 5,000 pay-
only probationers that the company supervised for the Atlanta Municipal Court

each quarter.[8]

58.    H.B. 310's three-month cap on fees also added a new statutory limit

on the collection of a $20 "enrollment fee," independent of the terms in Sentinel's

Atlanta contract.

59.    Under O.C.G.A. § 42-8-103, the fees that companies could legally

collect from pay-only probationers had been "capped so as not to exceed three

months of *ordinary* probation supervision fees."  O.C.G.A. § 42-8-103(b)

(emphasis added).  This limitation on fee revenue applies "notwithstanding the

number of cases for which a fine and statutory surcharge were imposed or that the

defendant was sentenced to serve consecutive sentences."  *Id.*

60.    As a result, pay-only probationers in Atlanta who needed three or

more months to pay off their fines could be required to pay Sentinel no more than

$81—that is, Sentinel's $27 per month probation supervision fee, multiplied by

---

[8] In June 2016, Defendants asked the Atlanta Municipal Court to restructure
Sentinel's contract.  (Ex. C at 2.)  Citing the impact of H.B. 310 and
"misperceptions" about the probation industry (*id.* at 7), Sentinel warned that its
"offender-funded" service model had become "politically and fiscally untenable
not only for the providers but for the cities and counties that relay [sic] on fines
generated by criminal sanctions."  (*Id.*)  Sentinel proposed that the court address
these issues by paying Sentinel directly for its services, instead of allowing
Sentinel to collect supervision fees.  (*Id.* at 11).  The court did not adopt Sentinel's
proposal.

three months.

61.     Therefore, after July 1, 2015, the new statute *prohibited* Sentinel from charging pay-only probationers $81 plus an additional $20 "enrollment fee," even if such a fee were to have been authorized and ordered by the court.

62.     Sentinel was not authorized to make an end-run around the statutory cap in pay-only cases by charging pay-only probationers $20 in addition to "three months of *ordinary* probation supervision fees" and calling that extra fee an "enrollment fee."  *See* O.C.G.A. § 42-8-103(b) (emphasis added).

## C.     Sentinel's Violation of Georgia Law and Its Contract with the City of Atlanta

63.     Sentinel violated its contract and Georgia law by extracting a $20 "enrollment" or "administrative" fee from Stacey Adams, Jerry Saint Vil, and other people who were sentenced to pay-only probation and needed more than 30 days to pay.

### i.     *Application of Defendants' Policies to Stacey Adams*

64.     On July 4, 2015, Stacey Adams received a citation for making an improper u-turn, a misdemeanor under Georgia law.  She appeared before Judge Elaine Carlisle in the Atlanta Municipal Court on July 27, 2015, and pleaded nolo contendere.  (Ex. D at 3.)

65.     The Atlanta Municipal Court sentenced Adams to a fine plus surcharges that totaled $215.25 (hereinafter referred to as a "fine," for simplicity's sake).  (*Id.*)

66.     If Adams had been able to pay the fine, her case would have been resolved that day, and she would have paid no money to Sentinel.  But Adams was a single mother who had recently been laid off from the company where she had worked for nine years.  Because she did not have enough money to pay the fine, Adams was placed on pay-only probation (i.e., she was sentenced to a twelve-month jail term, probated, with financial conditions only, which would be terminated upon payment of court-ordered financial obligations).

67.     Judge Carlisle memorialized Adams's sentence in a disposition form. (*Id.*)  The disposition listed out all financial obligations that had been imposed pursuant to the sentence.

68.     The disposition form shows that the court ordered Adams to pay Sentinel $36 per month for the first three months of her sentence.  This payment was comprised of the $27 monthly supervision fee specified in Sentinel's contract (Ex. B at 34), and a $9 monthly payment into the "Georgia Crime Victims' Emergency Fund," as required by O.C.G.A. § 17-15-13(f).

69.     Aside from these fees and the $215.25 fine, no other financial

obligations were imposed by the court, and the court ordered that Adams's twelve-month sentence be terminated upon full payment.

70.     After being sentenced, Adams was instructed to meet with a probation officer employed by Sentinel.  The Sentinel employee required Adams to sign a document acknowledging the terms of her sentence and a list of "general instructions" for probationers.  (Ex. D at 5.)

71.     Adams was required to affirm her understanding that "noncompliance with these orders and instructions could result in the revocation of my probation sentence and incarceration."

72.     This document also included language asserting that, if Adams paid off her $215.25 fine within 30 days, she would have to pay Sentinel only a one-time $20 fee, rather than having to pay $36 a month (comprised of Sentinel's ordinary $27 monthly supervision fee, and the $9 monthly payment into the crime victims' fund).  The total amount of $235.25 and the thirty-day deadline, on August 27, were written in by hand:

> $20 Probation Enrollment Fee. Must PAY $235 25 IN FULL BY 8/27 TO AVOID ADDITIONAL FEES. First payment due on 13 Aug 15

73.     This provision accords with Sentinel's contract, which authorizes "a one-time administrative fee of $20.00" only in instances where "all fines are paid

within the first thirty (30) days of supervision." The contract does not authorize Sentinel to impose the fee if probation continues for a longer period, in which case a probationer is instead to be charged the ordinary monthly supervision fee for each additional month served on probation.

74.     During this initial meeting, the probation officer also presented Adams with a document stating that unless she paid the entire $235.15 by August 13, 2015—17 days after she was sentenced, not 30—she would have to report to Sentinel's office and begin paying a supervision fee. (*Id.* at 6.) This document warned that failure to follow these instructions "*can result in an order being filed with the court that can suspend your license or result in the issuance of a warrant for your arrest.*" (*Id.*) (Emphasis in original.)

75.     Adams was unable to pay $235.25 by August 13.

76.     On August 19, 2015, Adams paid Sentinel $100 and met with a probation officer, who required her to sign another document. (*Id.* at 7.) Under the heading "Payment Acknowledgement," the document included this statement:

> I have been ordered by the Court to pay fines, costs, and restitution in the amount of $235.25 and a monthly GCVEF in the amount of $9 and a probation supervision fee in the amount of $27.

(*Id.* at 7.)

25

77.     Adams had been ordered by the Atlanta Municipal Court to pay fines

and costs in the amount of $215.25—not $235.25.  (*Id.* at 2.)

78.     On March 28, 2016, Adams made her final payment to Sentinel.  (*Id.*

at 10.)  Her case was formally closed on April 7, 2016.  (*Id.* at 12.)  In total,

Sentinel had required that Adams pay $349.42 before probation officers would

inform the court that Adams had completed her sentence.  The following table[9]

illustrates how those funds were allocated:

| | | |
|---|---|---:|
| Atlanta Municipal Court Fine | | 215.25 |
| Sentinel's Monthly Probation Supervision Fee | (#1 of 3) | 27.00 |
| " | (#2 of 3) | 27.00 |
| " | (#3 of 3) | 27.00 |
| Fee - Georgia Crime Victim's Emergency Fund | (#1 of 3) | 9.00 |
| " | (#2 of 3) | 9.00 |
| " | (#3 of 3) | 9.00 |
| Fees from Sentinel's Third-Party Credit Card Processor | | 6.17 |
| **Sentinel "Enrollment Fee" / "Administrative Fee"** | | **20.00** |
| TOTAL PAYMENTS | | 349.42 |

79.     Sentinel's demand that Adams pay a $20 "enrollment fee" was

unlawful for three reasons.

---

[9] This table was prepared by Plaintiffs' counsel.  It summarizes Sentinel payment
records from Plaintiff Stacey Adams's case.  *See* Exhibit D at 8–12.

80.     First, because Adams had needed more than 30 days to pay off her fines, Sentinel's collection of a $20 enrollment fee was not authorized by its contract with the Atlanta Municipal Court.  Nor had the court's sentence ordered Adams to pay this fee.  Therefore, Sentinel had violated Georgia's statutory framework for private probation, which only confers authority to collect money to be paid "according to the terms of the sentence . . . [or] by operation of law." O.C.G.A. § 42-8-101(b)(1).

81.     Second, because the $20 "enrollment fee" was not authorized by any statute, Sentinel violated Georgia law that prohibits the imposition of costs on criminal defendants unless those costs are explicitly authorized in the Georgia Code.[10]

82.     Finally, because Adams had paid Sentinel "three months of *ordinary* probation supervision fees," O.C.G.A. § 42-8-103(b) (emphasis added), collecting an additional $20 "enrollment fee" also violated the 2015 statute enacted to limit how much could be extracted from people sentenced to probation because of their inability to immediately pay a fine.

---

[10] Georgia law provides that "the only costs which may be imposed on a criminal defendant are those which are specifically authorized by statute to be assessed against a defendant."  *Smith v. State*, 526 S.E.2d 59, 59 (Ga. 2000) (citing *Walden v. State*, 371 S.E.2d 852 (Ga. 1988)).

### ii.    *Application of Defendants' Policies to Jerry Saint Vil*

83.     On three occasions between January 2015 and August 2016, Jerry Saint Vil was required to pay an illegal $20 "enrollment fee," in connection with three separate misdemeanor convictions for minor traffic offenses in the Atlanta Municipal Court.

84.     Saint Vil was first required to pay an illegal $20 enrollment fee in connection with a case designated with the case number 14-TR-073852.  (Ex. E.) On January 7, 2015, Saint Vil pleaded *nolo contendere* to following too closely, a misdemeanor under Georgia law.  He was ordered to pay a fine plus surcharges that totaled $386.00.  Because Saint Vil was unable to pay that amount immediately, he was sentenced to a twelve-month jail term, probated with "pay-only" conditions.  (*Id.* at 2.)

85.     The court ordered Saint Vil to pay Sentinel $36 per month, comprised of a $27 monthly supervision fee, and a $9 payment into the "Georgia Crime Victims' Emergency Fund," as required by O.C.G.A. § 17-15-13(f).  Aside from these fees and the $386 fine, no other financial obligations were imposed by the court.

86.     Sentinel's payment records show that on January 22, 2015, Saint Vil

paid a $20 "enrollment fee" in connection with case 14-TR-073852.  (*Id.* at 3.)

Saint Vil finished paying all fines associated with case 14-TR-073852 on March 5,

2015, which was 57 days after his sentence had started.  (*Id.* at 5.)  Because Saint

Vil needed more than 30 days to pay off his fine, Sentinel had no authority to

charge him a $20 "enrollment fee."

87.     The second time that Saint Vil was required to pay the illegal fee was

related to case number 15-TR-167189.  (Ex. F.)  On January 29, 2016, Saint Vil

pleaded *nolo contendere* to failure to maintain lane, a misdemeanor under Georgia

law.  He was ordered to pay a fine plus surcharges that totaled $315.25.  (*Id.* at 2.)

Because Saint Vil was unable to pay this amount immediately, he was sentenced to

a five-month jail term, probated with "pay-only" conditions.  Again, the court

ordered Saint Vil to pay Sentinel $36 per month, and imposed no other financial

obligations upon him.

88.     Sentinel payment records show that on April 7, 2016, Saint Vil paid a

$20 "enrollment fee" in case 15-TR-167189.  (*Id.* at 3.)  Saint Vil finished paying

all fines associated with case 15-TR-167189 on June 30, 2016, which was 157 days

after his sentence had started.  (*Id.* at 4.)  Because Saint Vil needed more than 30

days to pay off his fines, Sentinel had no authority to charge him this $20

"enrollment fee."

89.     Moreover, Saint Vil had also paid Sentinel three monthly supervision fees of $27 each, for a total of $81, in connection with this case.  The case was adjudicated after July 1, 2015, the date when new O.C.G.A. § 42-8-103(b) had capped pay-only probation fees "so as not to exceed three months of *ordinary* supervision fees."  *See* ¶¶ 53–62, *supra*.  Therefore, the collection of a $20 "enrollment fee" in case 15-TR-167189 also violated the 2015 statute, which had been enacted to protect people in Saint Vil's position.[11]

90.     The third time that Saint Vil was required to pay the illegal fee resulted from a case designated 16-TR-031784.  (Ex. G.)  On August 22, 2016, Saint Vil pled *nolo contendere* to the misdemeanor offense of failing to obey a traffic control device.  He was ordered to pay a fine plus surcharges that totaled $215.25.  Because Saint Vil was unable to pay this amount immediately, he was sentenced to an eleven-month jail term, probated with "pay-only" conditions.  Again, the court ordered Saint Vil to pay Sentinel $36 per month, for a maximum

---

[11] Transaction records included in Exhibit E show that some of Saint Vil's payments were also applied to a separate case, 16-TR-016312, in which Saint Vil had again been convicted of following too closely.  In that case, Saint Vil was sentenced to pay-only probation, as well; however, the sentence ran concurrently with the sentence in case 15-TR-167189, and it appears that Sentinel neither charged Saint Vil a second "enrollment fee," nor double-charged him for ordinary monthly probation supervision fees.

of three months, and imposed no other financial obligations upon him.  (*Id.* at 2.)

91.    After being sentenced, Saint Vil was instructed to meet with a probation officer employed by Sentinel.  The Sentinel employee required that Saint Vil sign a document that included this statement, under the heading "Payment Acknowledgement":

> I have been ordered by the Court to pay fines, restitution and fees in the amount of $235.25 and a $27 monthly probation supervision fee to Sentinel Offender Services.

(*Id.* at 3.)

92.    In case 16-TR-031784, Saint Vil had been ordered by the court to pay fines and costs in the amount of $215.25—not $235.25.  (*Id.* at 2.)

93.    Moreover, contrary to the "Payment Acknowledgment," Sentinel's contract with the court allowed the company to require that a pay-only probationer pay *either* a one-time $20 "administrative fee" if he paid all fines during the first 30 days of pay-only probation, *or* the company's $27 monthly ordinary supervision fee, in subsequent months—but not both.

94.    Sentinel's payment records show that on December 16, 2016, Saint Vil paid a $20 "enrollment fee."  (*Id.* at 4.)  In that transaction, Saint Vil also finished paying off the $215.25 fine.  He had been on probation for 116 days.

Because Saint Vil needed more than 30 days to pay off the fine, Sentinel had no authority to charge him a $20 "enrollment fee."

95.     As described below in ¶¶ 100–123, Sentinel extracted this third enrollment fee from Saint Vil four months after a state regulatory audit had informed the company that it had no authority to collect such fees.

96.     Altogether, Jerry Saint Vil had been required to pay the illegal $20 enrollment fee three times, for a total of $60, in three different cases.  The following tables[12] illustrate how Saint Vil's payments were allocated:

### Case 14-TR-073852 (Following Too Closely)

| | |
|---|---|
| Atlanta Municipal Court Fine & Costs | 386.00 |
| Sentinel's Monthly Probation Supervision Fee    (#1 of 1) | 27.00 |
| Fee - Georgia Crime Victim's Emergency Fund  (#1 of 1) | 9.00 |
| Fees from Sentinel's Third-Party Credit Card Processor | 7.06 |
| **Sentinel "Enrollment Fee" / "Administrative Fee"** | **20.00** |
| TOTAL PAYMENTS | 449.06 |

---

[12] These tables were prepared by Plaintiffs' counsel.  They summarize Sentinel payment records from the three cases in which Saint Vil was charged the unlawful fee.  *See* Exhibits E, F, and G.

**Case 15-TR-167189 (Failure to Maintain Lane)**

| | | |
|---|---|---|
| Atlanta Municipal Court Fine & Costs | | 315.25 |
| Sentinel's Monthly Probation Supervision Fee | (#1 of 3) | 27.00 |
| " | (#2 of 3) | 27.00 |
| " | (#3 of 3) | 27.00 |
| Fee - Georgia Crime Victim's Emergency Fund | (#1 of 3) | 9.00 |
| " | (#2 of 3) | 9.00 |
| " | (#3 of 3) | 9.00 |
| Fees from Sentinel's Third-Party Credit Card Processor | | 11.38 |
| **Sentinel "Enrollment Fee" / "Administrative Fee"** | | **20.00** |
| TOTAL PAYMENTS | | 454.63 |

**Case 16-TR-031784 (Failure to Obey Traffic Control Device)**

| | | |
|---|---|---|
| Atlanta Municipal Court Fine & Costs | | 215.25 |
| Sentinel's Monthly Probation Supervision Fee | (#1 of 2) | 27.00 |
| " | (#2 of 2) | 27.00 |
| Fee - Georgia Crime Victim's Emergency Fund | (#1 of 2) | 9.00 |
| " | (#2 of 2) | 9.00 |
| Fees from Sentinel's Third-Party Credit Card Processor | | 5.53 |
| **Sentinel "Enrollment Fee" / "Administrative Fee"** | | **20.00** |
| TOTAL PAYMENTS | | 312.78 |

### iii.    *Other Class Members*

97.    Between January 2013, when the relevant contract between Sentinel and Atlanta was executed, and January 2017, when Sentinel left the municipal

court, Sentinel supervised thousands, and perhaps tens of thousands, of people who, like Plaintiffs, were sentenced to pay-only probation by order of the Atlanta Municipal Court.

98.     According to the limited records presently available to Plaintiffs, during at least some of the relevant time period, Sentinel collected a quarterly average of $55,000 in "enrollment fees" from people sentenced to pay-only probation by the Atlanta Municipal Court.  (*See* Ex. A.)

99.     These numbers suggest that Sentinel collected a $20 enrollment fee from roughly 2,750 pay-only probationers, every three months.  Plaintiffs expect to show that a significant portion of the fees were collected illegally from pay-only probationers like Adams and Saint Vil, who needed more than 30 days of pay-only probation to finish paying their fines.

**D.     Finding by Georgia Regulatory Agency That Sentinel Had No Authority to Collect the "Enrollment Fees" from Plaintiffs**

100.     In August 2016, Sentinel's operations were audited by the Georgia Department of Community Supervision (DCS), the state agency that regulates probation providers.  *See* O.C.G.A. §§ 42-3-3(a)(8); 42-8-109.3(a)(1)–(2).

101.     DCS summarized the results of Sentinel's audit in a written "Compliance Review Report."  (Ex. H.)

102.    As part of the audit, DCS reviewed 117 probationer case files chosen from six of the 71 Georgia courts where Sentinel held probation supervision contracts.  DCS also reviewed Sentinel's probation service contracts from the 71 courts where Sentinel supervised probationers.  The review was conducted at one of Sentinel's offices, where DCS staff met with Defendants Tim Lewis and Steve Queen.  (*Id.* at 6–7.)

103.    One of the Sentinel jurisdictions included in the DCS case-file review was the Atlanta Municipal Court, and one of the case files reviewed was that of Plaintiff Stacey Adams.  (*Id.* at 20.)

104.    The Compliance Review Report noted that Adams and other people sentenced to pay-only probation by the Atlanta Municipal Court had been "charged a $20 enrollment fee; however contract only authorizes this fee where the case is paid in full within 30 days."  (*Id.*)

105.    The DCS report ended with the agency's regulatory "findings," which are "[a]rea(s) that must be improved upon to bring the [provider] into compliance with [DCS] rules and/or GA Statutes."  (*Id.* at 2.)

106.    Each finding was followed by a "recommendation," an action "required" to bring the probation provider into compliance with Georgia law.  (*Id.*)

107.    Sentinel's compliance report included a finding under the heading

35

"Unlisted Fee Amounts."  (*Id.* at 24.)  The finding noted that in five of the six

jurisdictions from which DCS had reviewed case-files, "Sentinel collected one or

more fees which do not specifically appear within either the service contract or the

court sentence."

108.    With regard to the Atlanta Municipal Court, DCS found that Sentinel

charged two fees that were neither authorized by Sentinel's contract, nor ordered

by the court as part of individuals' sentences:

> (a)    DCS admonished Sentinel for collecting a "$20 Enrollment fee
> for *all* Pay-Only cases."  (Emphasis added.)  DCS "note[d] the
> Atlanta Municipal Court contract authorizes a $20
> administrative fee; however, the contract only explicitly
> authorizes this fee for Pay-Only cases which pay in full within
> 30 days of sentencing."
>
> (b)    DCS also found that probationers who paid their fines via
> Sentinel's website were charged an unauthorized "convenience
> fee," on behalf of Sentinel's third-party credit card processor.

(*Id.*)

109.    To cure Sentinel's non-compliance with the law, DCS instructed the

company to "[e]nsure all fees are included within, and collected in accordance

with, either the court contract or a court order."  DCS further instructed the company to "[c]onsult with the courts to determine if probationers are due refunds."  (*Id.*)

**E.     Sentinel's Unsuccessful Attempt to Modify its Contract, and Retroactively Authorize Collection of Illegal "Enrollment Fees"**

110.    Plaintiffs expect to show that, after receiving the DCS Compliance Review Report in August 2016, Sentinel continued to collect unauthorized enrollment fees from Plaintiff Saint Vil and others, while making no effort to provide refunds to low-income probationers who had paid such fees during Sentinel's many years at the court.

111.    Instead, Defendants Mark Contestabile and Tim Lewis asked the Atlanta Municipal Court to sign a new Standing Order purporting to ratify the company's violation of Georgia law and the 2013 fee agreement.

112.    On September 6, 2016, Contestabile emailed a Microsoft Word document to the clerk-administrator of the Atlanta Municipal Court and one of its judges.  (Ex. I at 2.)  Contestabile asked that the court sign the document, which was styled as a "Standing Order in re: Payment Transactions and Fees."  (*Id.* at 3.)

113.    Sentinel's draft order purported to retroactively allow the company to collect the two fees that DCS had identified as unauthorized in the Compliance

37

Review Report.

114.    The draft order authorized the convenience fee charged by Sentinel's third-party credit card processor.  Sentinel's draft order also purported to "acknowledge" that the 2013 contract between Sentinel and the Atlanta Municipal Court had authorized fees "includ[ing] a one-time twenty dollar administration fee *on cases* defined as Pay Only."  (*Id.*)  (Emphasis added.)

115.    Thus, while styled as a "Standing Order," the document was in effect a modification of the 2013 Sentinel-Atlanta contract, with its proviso allowing Sentinel to collect a fee from pay-only probationers "*if* all fines are paid within the first (30) days."  (*See* Ex. B at 34.)  (Emphasis added.)

116.    Between September 6 and October 12, 2016, Defendants Mark Contestabile and Tim Lewis sent over a dozen emails to the court's judges and administrator on the topic of the Standing Order.  (Ex. I at 2–17.)  Contestabile and Lewis repeatedly asked that the court sign the order and return it to them, so that the order could be sent to DCS.

117.    On October 3, 2016, Mark Contestabile emailed Judge Chris Portis and the clerk-administrator "to inform the court that Sentinel does not wish to execute the final one year extension of our contract which is scheduled to begin in January of 2017."  Contestabile stated that Sentinel's Atlanta business was

"financially no longer feasible to operate" because of the probation reform legislation that had been enacted in 2015. (Ex. J at 2.)

118. On October 10, Judge Portis emailed Mark Contestabile and asked him to "please provide a quick explanation" as to why Sentinel needed to provide the Standing Order to DCS. Contestabile represented that "DCS wanted further clarification regarding the $20 Administrative Fee and its application." He hoped to use the new order to "demonstrate to DCS that operations are being administered in accordance with court expectations." (Ex. I at 16.)

119. On October 12, Chief Judge Calvin Graves signed a new Standing Order (*id.* at 18), which differed from the draft provided by Sentinel.

120. Like Sentinel's draft, the court's order authorized collection of a convenience fee from probationers who paid online with a credit card. However, the court removed Sentinel's draft language purporting to "acknowledge" that the 2013 contract allowed Sentinel to collect a $20 administrative fee "on cases defined as Pay Only," i.e., from every pay-only probationer.

121. The following page reproduces Sentinel's draft order, with redlines added to indicate where the Atlanta Municipal Court removed the language that Sentinel proposed in an attempt to secure approval for its conduct:

# IN THE MUNICIPAL COURT OF ATLANTA
## STATE OF GEORGIA

### STANDING ORDER

**IN RE:** Payment Transactions and Fees

**WHEREAS** ~~IT IS HEREBY CONSIDERED, ACKNOWLEDGED, ORDERED AND ADJUDGED,~~ the Court entered into an Agreement effective January 29, 2013, contract number FC-5440 which incorporates the Request for Proposal response submitted by Sentinel Offender Services, whereby Sentinel agreed to provide probation services to the Municipal Court of Atlanta.

Included in the Agreement is the description of payment transaction methods available to the probationer for payment of court imposed financial obligations, ~~furthermore, included therein is the proposed service fee schedule which includes a one-time twenty dollar administration fee on cases defined as Pay Only,~~

The Agreement acknowledges that the probation service provider will accept credit and/or debit cards as a means of payment for any court ordered obligations. The Court acknowledges the credit card processing company charges a reasonable transaction fee to the probationer if the probationer chooses to pay by credit or debit card. The Court acknowledges the probationer also has the option to pay by cash, money order or certified check. The Court further acknowledges that the credit card transaction processing fee is not charged by or retained by the Court's probation service provider. ~~Furthermore, the Agreement acknowledges and approves the administrative fee as described and acknowledges that if a probationer satisfies their financial obligations within the first thirty days of probation, no probation supervision fees will be assessed on a case defined as Pay Only. Probation supervision fees will begin after the first 30 days of supervision and will be assessed monthly not to exceed three months of supervision fees.~~

**NOW THEREFORE,** this Standing Order shall be filed with the Clerk of Court and remain in effect with respect to all cases until further order of this Court.

**SO ORDERED**, this _____ day of _____, 2016

BY:_____

Calvin S. Graves, Chief Judge
Municipal Court of Atlanta

122. On the afternoon of October 12—having received the court's new Standing Order—Contestabile sent an email to Judge Graves and the clerk of the Atlanta Municipal Court. Contestabile acknowledged that the new order "does not address the application of the Administrative fee." (*Id.* at 19.)

123. On October 31, Contestabile submitted a formal letter affirming that Sentinel would cease operations at the Atlanta Municipal Court at the end of 2016. (*Id.* at 22.) Sentinel actually ceased Atlanta operations somewhat later, in January 2017.

124. Plaintiffs expect to show that Sentinel continued to charge illegal enrollment fees until its departure from the court in January 2017. As explained above in ¶¶ 90–94, for instance, Sentinel extracted a $20 enrollment fee from Plaintiff Jerry Saint Vil on December 16, 2016. This was four months after the DCS audit found that Sentinel's fees were unauthorized, and two months after the Atlanta Municipal Court's Chief Judge had rebuffed Defendants' attempts to secure the court's blessing for Sentinel's many years of unlawful collections.

## F. Sentinel's Further Efforts to Avoid Regulatory Enforcement, and Its Eventual Sale of Regulated Business Holdings

125. During the months of September 2016 to January 2017, Defendants also disputed the results of the Department of Community Supervision's August

2016 Compliance Review Report, and the regulator's finding that Sentinel had no authority to collect "enrollment fees" from Plaintiffs and others in Atlanta.

126.   Defendants' efforts included a series of letters that Defendant Steve Queen, Sentinel's Director of Georgia Services, wrote to DCS auditors.

127.   In a letter dated October 12, 2016 (Ex. K), Queen asserted that Sentinel's Atlanta contract authorized the company to collect a $20 administrative fee from *every* pay-only probationer, despite the contrary meaning of the only contractual language addressing the matter.

128.   Queen wrote, "[o]ur language indicates that there is an Administrative Fee of only $20 for individuals who pay their fines in full in the first 30 days." (*Id.* at 4.)  Queen argued that Sentinel nevertheless had authority to demand the fee from *all* pay-only probationers, because the language of the contract "did not exclude the Administrative Fee." (*Id.*)

129.   Queen further asserted that Sentinel was authorized to collect the fee from every single pay-only probationer because Sentinel staff had "identified" the fee "[d]uring the bid process" for the contract. (*Id.*)

130.   Queen presented no evidence for this assertion.  Nor did he offer reasons why purported discussions during negotiation would override the meaning of the contract's language, which Queen had acknowledged, or of another

42

provision appearing on the same page of the contract, right above the fee proviso:

> The court order directs the probationer to pay a monthly supervision fee to Sentinel in an amount approved by the Court and specified in the contract.  A probationer is *never* charged more than the contract amount.

(Ex. B at 34) (emphasis added).[13]

131.    Queen also told DCS that Sentinel had requested a new Standing Order from the court, and a contract amendment, "to ensure there is no misunderstanding."  As discussed in ¶¶ 110–124 above, the Atlanta Municipal Court never signed such an order, and the contract was never amended to retroactively authorize Sentinel's illegal conduct.

132.    On January 17, 2017, the City of Atlanta entered into a contract with another probation company, Judicial Corrections Services ("JCS"), and the company took over from Sentinel on or about January 25.

133.    Defendant Steve Queen continued to press DCS to reverse its finding that Sentinel had been charging an unauthorized fee to probationers in Atlanta.  In a letter dated January 19, Queen told DCS that "[t]he findings related to the Atlanta Municipal Court need to be removed [because] Sentinel no longer serves the

---

[13] As Georgia's largest probation provider, Sentinel had served at least 80 courts over the years, and its executives had decades of experience with responding to RFPs and contracting with courts for probation services.

Atlanta Municipal Court and all files have been transferred to a new vendor." (Ex. L at 3.)

134.    Sentinel still has possession of the funds that it illegally collected from Plaintiffs, and presumably from other members of the putative class.

135.    Moreover, Plaintiffs expect to show that Sentinel did not transfer files to Atlanta's new probation provider, JCS. When served with a request for probation records from two cases during the relevant time period, JCS's corporate counsel replied that "no data was received by Judicial Corrections Services from Sentinel Offender Services" with regard to those cases. (Ex. M at 2.)

136.    When the Atlanta Municipal Court was asked to provide payment records from Plaintiffs' cases, the clerk's office produced only the court's internal records. These documents account for court-ordered fines that Sentinel collected and then remitted to the court, but reveal nothing about money that Sentinel collected and retained for itself. (*Compare* Ex. N (court record showing that Plaintiff Jerry Saint Vil paid $315.25 in fines and surcharges in case 15-TR-167189) *with* Ex. F at 3–5 (Sentinel payment records showing that, in addition to the fine, Sentinel also collected an illegal $20 "enrollment fee," and three months of ordinary probation supervision fees as allowed by law).)

137.    Upon information and belief, Sentinel employees also removed hard-

44

copy case records from the Atlanta Municipal Court before the end of the

company's contract, leaving behind no information about who Sentinel had

supervised, or what fees Sentinel may have demanded from those people in excess

of the money the Atlanta Municipal Court had ordered them to pay.

138.    On February 20, 2017, Sentinel sold its Georgia probation contracts to

another private probation company.[14]  As a result, Sentinel's actions escaped

further scrutiny from the Department of Community Supervision, and no

disciplinary action was brought to remedy the noncompliance findings from the

August 2016 Compliance Review Report.

## VI.   CLAIMS FOR RELIEF

### COUNT I:
### DUE PROCESS VIOLATION

**Violation of the Fourteenth Amendment to the United States Constitution,
Brought Under 42 U.S.C. § 1983, and
Violation of Art. I, Sec. I, Para. I of the Georgia Constitution**

139.    Plaintiffs Stacey Adams and Jerry Saint Vil incorporate herein and

reallege, as if fully set forth herein, all factual allegations of the preceding

---

[14] "CSRA Probation Services Acquires Sentinel," *Augusta Chronicle*, February 27, 2017, available online at http://chronicle.augusta.com/news/2017-02-27/csra-probation-services-acquires-sentinel (last visited June 17, 2017).

paragraphs.

140.    Defendants acted at all times under color of state law.  Money is property that cannot be taken from a person under color of law without due process.  Defendants established a policy and practice of systematically extracting unlawful "enrollment fees" without any legal authority to do so.  Acting pursuant to this longstanding policy, Defendants jointly and severally deprived Plaintiffs' of their property without due process of law, in violation of Plaintiffs' constitutional rights.  *See* U.S. Const. amend. XIV, § 1; Ga. Const. art. 1, § I, ¶ I.

141.    Defendants directly and proximately caused these violations of Plaintiffs' rights.  Defendants knew or should have known that depriving people of property under color of law, without due process, violated Plaintiffs' constitutional rights.  Defendants Mark Contestabile, Tim Lewis, and Steve Queen caused, authorized, condoned, ratified, approved, and knowingly participated in Sentinel's longstanding policy and practice of demanding illegal $20 "enrollment fees" from pay-only probationers.

142.    Defendants' actions were willful, deliberate, and malicious, and involved reckless or callous indifference to Plaintiffs' rights, and should be punished and deterred by an award of punitive or enhanced damages against all Defendants as permitted by law.

46

**COUNT II:**
**EQUAL PROTECTION VIOLATION**

**Violation of the Fourteenth Amendment to the United States Constitution,**
**Brought Under 42 U.S.C. § 1983, and**
**Violation of Art. I, Sec. I, Para. I of the Georgia Constitution**

143.    Plaintiffs incorporate herein and reallege, as if fully set forth herein,

all factual allegations of the preceding paragraphs.

144.    Defendants treated the most vulnerable pay-only probationers

differently from those who were able to pay off their fines within 30 days.  Only

individuals of limited financial means were subjected to Defendants' policy of

illegally extracting "enrollment fees."

145.    Defendants enacted a policy of extracting additional money from

probationers on the basis of wealth, imposing disparate treatment that served no

legitimate purpose.  Through their policy of extracting additional fees from low-

income probationers who could not pay their fines immediately, Defendants

deprived Plaintiffs of the equal protection of the laws.  U.S. Const. amend. XIV;

Ga. Const. art. 1, § I, ¶ II.

146.    Defendants jointly and severally denied Plaintiffs' right to equal

protection, acting under color of law.  Defendants knew or should have known that

depriving low-income and only low-income people of property—and of doing so

precisely because those people had low incomes—violated Plaintiffs'

constitutional rights.

147.    Defendants directly and proximately caused those violations.

Defendants Mark Contestabile, Tim Lewis, and Steve Queen caused, authorized,

condoned, ratified, approved, and knowingly participated in Sentinel's

longstanding policy and practice of demanding illegal $20 "enrollment fees" from

pay-only probationers.

148.    Defendants' actions were willful, deliberate, and malicious, and

involved reckless or callous indifference to Plaintiffs' rights.  They should be

punished and deterred by an award of punitive or enhanced damages against all

Defendants as permitted by law.

## COUNT III:
## UNJUST ENRICHMENT / EQUITABLE RELIEF

149.    Plaintiffs incorporate herein and reallege, as if fully set forth herein,

all factual allegations of the preceding paragraphs.

150.    Defendants took and converted to their own use the funds set forth

above from Plaintiffs and putative class members.  Those funds were extracted

from Plaintiffs in violation of their federal and state constitutional rights to due

process of law and equal protection of the laws.  Defendants had no legal right to

48

Plaintiffs' money and took these funds in violation of state law as related above. Under the circumstances here, Defendants' retention of Plaintiffs' money would result in unjust enrichment.

## COUNT IV:
## MONEY HAD AND RECEIVED

151.    Plaintiffs incorporate herein and reallege, as if fully set forth herein, all factual allegations of the preceding paragraphs.

152.    An action for money had and received is founded upon the equitable principle that no one ought to unjustly enrich himself at the expense of another. Recovery is authorized in all cases where one has received money under such circumstances that in equity and good conscience he ought not to retain it. *Sentinel Offender SVCS., LLC v. Glover*, 766 S.E.2d 456, 471 (Ga. 2014).

153.    Plaintiff Stacey Adams has demanded that Defendants return the illegally collected fees to her and to everyone else from whom they were taken. The moneys have not been returned.

154.    Defendants received money that in equity and good conscience they should not be permitted to keep, because they obtained it in violation of the Constitutions of the United States and the State of Georgia, and in violation of the laws of the State of Georgia.  Therefore, Plaintiffs have a cause of action under the

doctrine of money had and received.

## COUNT V:
## NEGLIGENT MISREPRESENTATION

155.    Plaintiffs incorporate herein and reallege, as if fully set forth herein,

all factual allegations of the preceding paragraphs.

156.    Defendants committed the tort of negligent misrepresentation against

Plaintiffs.  Negligent misrepresentation consists of (1) a defendant's negligent

supply of false information to foreseeable persons; (2) such persons' reasonable

reliance upon the false information; and (3) economic injury proximately caused

by such reliance.  *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*,

479 S.E.2d 727, 729 (Ga. 1997).

157.    Acting under policies caused, authorized, condoned, ratified, and

approved by Defendants, Sentinel's probation officers made false written and oral

representations to Plaintiffs.

158.    On August 19, 2015, Plaintiff Stacey Adams was induced to sign a

form purporting to acknowledge that she had been "ordered by the Court to pay

fines, costs, and restitution in the amount of $235.25," plus Sentinel's monthly

supervision fees.  (Ex. D. at 7; *see also* ¶¶ 76–77, *supra.*)  Sentinel and its

employees knew or should have known that, in fact, Adams had been ordered to

pay $215.25—not $235.25.

159.   Adams was told that "noncompliance with these orders and instructions could result in the revocation of [her] probation sentence and incarceration." Adams reasonably relied on Defendants' false representations and instructions regarding how much she was required to pay.

160.   Adams was injured by her reliance on Defendants' false representations because, as a direct and proximate result, Adams paid Defendants $20 that they were not entitled to.

161.   On August 22, 2016, Plaintiff Jerry Saint Vil was induced to sign a form purporting to acknowledge that he had been "ordered by the Court to pay fines, restitution, and fees in the amount of $235.25 and a $27 monthly probation supervision fee." (Ex. G at 3; *see also* ¶¶ 91–92, *supra.*) Sentinel and its employees knew or should have known that, in fact, Saint Vil had been ordered to pay $215.25—not $235.25.

162.   Saint Vil was told that "noncompliance with these orders and instructions could result in the revocation of [his] probation sentence and incarceration." Saint Vil reasonably relied on Defendants' false representations and instructions regarding how much he was required to pay.

163.   Saint Vil was injured by his reliance on Defendants' false

representations because, as a direct and proximate result, he paid Defendants $20 that they were not entitled to.

164.    Plaintiffs expect to show that Defendants made similar misrepresentations to Saint Vil in connection with his other traffic cases before the court, and that Saint Vil's reasonable reliance upon Defendants' misrepresentations caused economic injury in the total amount of $60.

## COUNT VI:
## NEGLIGENT SUPERVISION

165.    Plaintiffs incorporate herein and reallege, as if fully set forth herein, all factual allegations of the preceding paragraphs.

166.    Defendants committed the tort of negligent supervision against Plaintiffs.  Defendants had a duty to exercise reasonable care in the supervision of their employees acting as private probation officers, and to ensure that their employees required that probationers pay only those moneys required and authorized by law.  Defendants breached their duty because they knew or should have known their employees would unlawfully overcharge probationers.  Plaintiffs were injured as a result.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court will:

(a)   Assume jurisdiction over this action;

(b)   Determine by Order pursuant to Rule 23 of the Federal Rules of Civil Procedure that this action be maintained as a class action;

(c)   Appoint the undersigned counsel as class counsel;

(d)   Order trial by jury on all claims so triable;

(e)   Enter judgment in favor of Plaintiffs;

(f)   Impose a constructive trust on all money taken from Plaintiffs and putative class members in violation of law;

(g)   Order that Defendants return all money taken from Plaintiffs and others in violation of law, with statutory interest paid;

(h)   Enter judgment in favor of Plaintiffs and the class for compensatory (or, in the alternative, nominal) and punitive damages, with statutory interest, as allowed by law;

(i)   Award enhanced or punitive damages as permitted by law and in an amount to be proven at trial;

(j)   Award Plaintiffs the costs of this lawsuit and reasonable attorneys' fees and expenses pursuant to 42 U.S.C. § 1988; and

(k)   Order such further relief as this Court may deem just and proper.

Respectfully submitted,

s/ Akiva Freidlin

Sarah Geraghty
Georgia Bar No. 291393
Akiva Freidlin
Georgia Bar No. 692290
SOUTHERN CENTER
FOR HUMAN RIGHTS
83 Poplar Street, N.W.
Atlanta, GA 30303
Telephone: (404) 688-1202
Facsimile: (404) 688-9440
sgeraghty@schr.org
afreidlin@schr.org

Michael Caplan
Georgia Bar No. 601039
Julia Stone
Georgia Bar No. 200070
CAPLAN COBB LLP
75 Fourteenth Street, N.E.
Suite 2750
Atlanta, GA 30309
Telephone: (404) 596-5600
Facsimile: (404) 596-5604
mcaplan@caplancobb.com
jstone@caplancobb.com

*Counsel for Plaintiffs*

July 31, 2017.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 31, 2017, I electronically filed the foregoing with the Clerk using the CM/ECF system, which will send notification of filing to all counsel of record.

<u>/s/ Akiva Freidlin</u>