# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| STACEY ADAMS and JERRY SAINT VIL, on behalf of themselves and others similarly situated, | |
| Plaintiffs, | |
| v. | 1:17-cv-2813-WSD |
| SENTINEL OFFENDER SERVICES, LLC; MARK CONTESTABILE, Chief Business Development Officer, Sentinel Offender Services, LLC; TIM LEWIS, Vice President of Georgia Services, Sentinel Offender Services, LLC; and STEVE QUEEN, Director of Services, Sentinel Offender Services, LLC; | |
| Defendants. | |

## OPINION AND ORDER

This matter is before the Court on the parties' Joint Motion for Conditional Certification of Settlement Class [21] ("Original Joint Motion") and the parties' First Amended Joint Motion for Conditional Certification of Settlement Class [25] ("Amended Joint Motion").

## I. BACKGROUND

### A. <u>Nature of the Action</u>[1]

This is a class action brought by two named representatives, Stacey Adams and Jerry Saint Vil (the "Plaintiffs") on their behalf and on behalf of a class of similarly situated people, against Defendant Sentinel Offender Services, LLC ("Sentinel"), and individuals employed by Sentinel. Sentinel provides probation supervision services in non-felony probation cases for courts throughout the State of Georgia. From 2006 to 2017, Sentinel had a contract with the City of Atlanta, Georgia, to provide probation services for probationers sentenced by the Municipal Court of Atlanta, including general probation supervision, fine collection services, counseling, and other probation services. Defendants Mark Contestabile, Tim Lewis and Steve Queen were at various relevant times employed by Sentinel with managerial responsibilities related to the administration of the probation services provided by Sentinel to the Municipal Court of Atlanta.

The Amended Complaint [5] alleges that Defendants illegally collected excessive or unauthorized fees that were not ordered by any court, permitted by statute, or authorized by Sentinel's contract with the Municipal Court of Atlanta. Plaintiffs specifically allege that fees collected by Defendants in certain instances violated O.C.G.A. § 42-8-103(b). As of July 1, 2015, that statute provided:

---

[1] The Court takes these facts from the parties' Amended Joint Motion [25] and the First Amended Complaint [5].

"When pay-only probation is imposed, the probation supervision fees shall be capped so as not to exceed three months of ordinary probation supervision fees notwithstanding the number of cases for which a fine and statutory surcharge were imposed or that the defendant was sentenced to serve consecutive sentences . . . ."

O.C.G.A. § 42-8-103(b).

Pay-only probationers sentenced in the Municipal Court of Atlanta were generally required to pay Sentinel a fee of $20 during the first month of Sentinel's services. In the event a pay-only probationer paid off their fines within the first 30 days of probation, Sentinel would not charge additional fees for services. In the event a pay-only probationer did not pay off fines within the first 30 days of probation, Sentinel would charge the probationer $27 for supervision fees up to an additional three (3) times.

Plaintiff Stacey Adams was sentenced by the Municipal Court of Atlanta in July 2015 to pay a fine and fees totaling $215.25. Plaintiff Adams did not pay her fine and fees at the time of her sentencing and was sentenced to pay-only probation. Plaintiff Adams was charged by Sentinel a $20 "enrollment" fee in the first month of her probation and three (3) supervision fees each in the amount of $27.

Plaintiff Jerry Saint Vil was sentenced for traffic violations by the Municipal Court of Atlanta on three (3) occasions. On each occasion, Plaintiff Saint Vil did not pay his fines and fees at the time of his sentencing and was sentenced to pay-

only probation. For the first sentence, Plaintiff Saint Vil was charged a $20 enrollment fee. For the second sentence, Plaintiff Saint Vil was charged three (3) supervision fees of $27 each. For the third sentence, Plaintiff Saint Vil was charged a $20 enrollment fee in the first month of his probation and two (2) supervision fees of $27 in each of the following months.

Plaintiffs filed suit against Defendants on July 31, 2017. In their amended complaint, Plaintiffs assert claims under the United States Constitution and the laws of the State of Georgia. Plaintiffs seek equitable relief, compensatory and punitive damages, and attorney's fees. Plaintiffs also seek to certify a class consisting of "all persons who (1) were sentenced by the Atlanta Municipal Court to pay-only probation under the supervision of Sentinel Offender Services after July 25, 2013; (2) were unable to pay off their court-ordered fines within 30 days of having been sentenced; and (3) were nevertheless required to pay a $20 'enrollment fee.'" ([25.1] at 5).

Defendants contend that all fees charged were authorized by Sentinel's contract with the City of Atlanta, were not in excess of any statutorily imposed restrictions and were specifically authorized by the orders sentencing pay-only probationers. Defendants further contend that the relevant portion of the statute at issue, O.C.G.A. § 42-8-103(b), became effective on July 1, 2015, and that claims

for alleged unauthorized fees charged for sentences before July 15, 2015, should be excluded from this action.

   B.   <u>The Proposed Settlement</u>

   On November 30, 2017, the parties attended a mediation session.  During the mediation, the parties agreed to a framework by which the claims asserted in this case could be resolved.  The parties used this framework to structure a settlement agreement attached to the Original Joint Motion as Exhibit A.  ([21.1] at 33-61).

   The Court reviewed the proposed settlement agreement and scheduled a teleconference with the parties to discuss its terms.  During the teleconference, the Court expressed concerns regarding the creation and funding of the settlement fund and the stipulation of attorney's fees as provided in the settlement agreement.  ([24]).

   In response, the parties filed an Amended Joint Motion [25] and attached a revised settlement agreement as Exhibit A ("the Settlement Agreement").  ([25.1] at 33-63).  The Settlement Agreement requires the parties to move the Court to certify a class of persons ("the Class") consisting of each individual who meets the following requirements:  (1) the person was sentenced to "pay only" probation as defined by O.C.G.A. § 42-8-103 by the Municipal Court of Atlanta, Georgia on or after July 1, 2015; and (2) the person was subsequently charged and paid to Defendant Sentinel Offender Services, LLC at least one enrollment or

administrative fee of $20 and supervision fees of at least $81 for a single

sentencing event (defined as a single sentencing order whether said order

references multiple cases or imposes consecutive sentences). ([25.1] at 34 ¶ 2).

The parties believe, based on a review of documents and files by Plaintiffs,

Defendants, and their attorneys, that the Class will consist of no more than 2352

potential members. The Settlement Agreement provides that each member of the

Class will be notified of the terms of the Settlement Agreement and his or her right

to opt out of the Class. ([25.1] at 46-59 ("Notice of Class Action, Proposed

Settlement and Final Approval/Fairness Hearing"); [25.1] at 60-63 ("Response

Form")).

The Settlement Agreement further provides that Defendants will make

available a "Class Fund" to reimburse and compensate all Class Members who

timely submit claim forms. Each member of the Class who completes and submits

a claim form within the designated time period is presumptively entitled to receive:

(1) a refund of $23 for fees previously paid by the Class Member to Defendant

Sentinel ("the Restitution Amount"); and (2) additional damages of $30 per Class

Member ("the Damages Amount"). The Settlement Agreement states that

Defendants shall pay 50% of the potential Total Damages Amount plus the

anticipated compensation/settlement amounts of $5,000.00 to each of the

representative Plaintiffs ($53.00 x 2352 potential Class Members = $124,656.00 x

50% = $62,328.00 + $10,000.00 = $72,328.00) to attorneys for the Class within 23 days of the Court's preliminary approval of the settlement to be deposited in a trust account pending final approval and distribution. ([25.1] at 39-40). This amount will be treated as a deposit or credit towards the Total Damages Amount and anticipated settlements with the representative plaintiffs, but will not increase or decrease the final calculation of the Total Damages Amount to be calculated as set forth above. To address a concern raised by the Court regarding Defendants' ability to fund 100% of the potential Total Damages Amount, the Settlement Agreement states Defendants have provided Plaintiffs evidence of Defendant Sentinel Offender Services, LLC's creditworthiness and represent to the Court that said Defendant is financially capable of funding up to the potential Total Damages Amount. (Id.)

The Settlement Agreement also states that:

- Defendants will pay Plaintiffs' counsel's attorney fees and costs in the amount of $30,000, subject to approval by the Court;

- Plaintiffs' counsel will be responsible for the administration of the settlement with respect to mutually agreeable notification to the potential class members and distribution of settlement checks to properly responding Class Members;

- Defendant Sentinel will reimburse Plaintiffs' counsel for up to $8,000 of the actual expenses (publication, postage and copying) of the administration of the settlement within 30 days of receipt of documentation of the expenses incurred; and

- The individual claims of Plaintiffs Adams and Saint Vil will be resolved by each receiving $5,000 as payment for their services as class representatives and for the resolution all claims asserted or which could be asserted in this lawsuit.

As required by Local Rule 23.1(C)(2), the parties have conferred and agree that Plaintiffs' attorneys may contact class members as set forth in the Settlement Agreement.

## II.   DISCUSSION

The Amended Joint Motion requests the Court to certify a class for settlement purposes, appoint class counsel, preliminarily approve the proposed Settlement Agreement, direct that notice shall be issued to the class, and schedule a final fairness hearing.

### A.   Conditional Certification of Settlement Class

The parties move for certification of the following class for the purposes of settling this action:

> Individuals who meet the following criteria: (1) the person was sentenced to "pay only" probation as defined by O.C.G.A. § 42-8-103 by the Municipal Court of Atlanta, Georgia on or after July 1, 2015; and (2) the person was subsequently charged and paid to Defendant Sentinel Offender Services, LLC at least one enrollment fee of $20 and subsequent supervision fees of at least $81 for a single sentencing event (defined as a single sentencing order whether said order references multiple cases or imposes consecutive sentences).

([25.1] at 5-6). A plaintiff seeking to certify a settlement class must first satisfy the requirements of Federal Rule of Civil Procedure 23(a), and at least one of the

requirements of Rule 23(b).  See Fed. R. Civ. P. 23(a)-(b); Amchem Prods.,

Inc. v. Windsor, 521 U.S. 591, 621 (1997) (Rule 23(e), which provides for

settlement of a class action, "was designed to function as an additional

requirement, not a superseding direction, for the 'class action' to which Rule 23(e)

refers is one qualified for certification under Rule 23(a) and (b).").

> ### 1.    Rule 23(a)

Rule 23(a) provides:

**(a) Prerequisites.** One or more members of a class may sue or be sued as
representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the
claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the
interests of the class.

Fed. R. Civ. P. 23(a).  In determining whether certification of a class for purposes

of settlement is appropriate, the Court must evaluate whether a plaintiff can

establish the requisite elements of Rule 23(a): numerosity, commonality, typicality

and adequacy of representation.  Amchem, 521 U.S. at 613.

To satisfy the numerosity requirement, Plaintiffs must establish that the

members of the proposed class are "so numerous that joinder of all members is

impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, the Settlement Class consists of

2,352 individuals ([25.1] at 9), and the Court finds that the numerosity requirement

is satisfied.  See Cox v. Am. Cast Iron Pipe Co., 784 F.2d 1546, 1553 (11th Cir.

1986) (noting classes of more than forty members typically satisfy the numerosity

requirement).  "[T]he proposed class is 'adequately defined and clearly

ascertainable.'"  Carriuolo v. General Motors Co., 823 F.3d 977, 984 (11th Cir.

2016) (quoting Little v. T-Mobile USA, Inc., 691 F.3d 1302, 1304 (11th Cir.

2012)).  Each member of the Class has been determined by examining records in

Defendants' possession identifying whether a particular probationer was charged

and paid the disputed fees during the period in question.

To satisfy the commonality requirement, Plaintiffs must show that questions

of law or fact are common to the entire class.  Fed. R. Civ. P. 23(a)(2).  "[F]or

purposes of Rule 23(a)(2) even a single common question will do."  Carriuolo v.

Gen. Motors Co., 823 F.3d 977, 984 (11th Cir. 2016), citing Wal–Mart Stores, Inc.

v. Dukes, 564 U.S. 338 (2011) (quotations omitted).  "That common contention . . .

must be of such a nature that it is capable of classwide resolution—which means

that determination of its truth or falsity will resolve an issue that is central to the

validity of each one of the claims in one stroke."  Id.; see also Williams v. Mohawk

Indus., Inc., 568 F.3d 1350, 1355 (11th Cir. 2009) ("Commonality requires that

there be at least one issue whose resolution will affect all or a significant number

of the putative class members." (quotation omitted)).  Here, the claims of the

members of the Class are all based on the common legal question of whether pay-only probationers were charged and paid for allegedly unauthorized probation supervision fees after the enactment of O.C.G.A. § 42-8-103(b).  The Court finds that the commonality requirement of Rule 23(a)(2) is satisfied.

To satisfy the typicality requirement, the claims of the class representative must be typical of the claims of the class members.  Fed. R. Civ. P. 23(a)(3).  The claim of a class representative is typical if "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."  Ault v. Walt Disney World Co., 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir 1984)).  Here, the Plaintiffs and the other members of the Class all assert claims based on Defendants' alleged practice of charging pay-only probationers fees in excess of that allowable by Section 42-8-103(b).  Although there are marginal factual differences among particular Class Members, the "strong similarity of legal theories" asserted by each Class Member is sufficient to satisfy Rule 23(a)(3).  Local 703, I.B. of T. Grocery & Food Employees Welfare Fund v. Regions Financial Corp., 762 F.3d 1248, 1259 (11th Cir. 2014) (quoting Williams, 568 F.3d at); see Ault, 692 F.3d at 1216 (finding typicality requirement satisfied where class members asserted claims based on amusement park's prohibition of certain mobility devices even though "each class member may have a stronger or

weaker claim depending upon his or her degree of reliance" on the device).
Plaintiffs' claims arise of out of the same conduct as the claims of the Settlement
Class, and the Court finds that the typicality requirement of Rule 23(a)(3) is
satisfied.

To satisfy the adequacy of representation requirement, Plaintiffs must show
that they "will fairly and adequately protect the interests of the class."
Fed. R. Civ. P. 23(a)(4). "This 'adequacy of representation' analysis encompasses
two separate inquiries: (1) whether any substantial conflicts of interest exist
between the representatives and the class; and (2) whether the representatives will
adequately prosecute the action." Valley Drug Co. v. Geneva Pharm., Inc., 350
F.3d 1181, 1189 (11th Cir. 2003). Here, Plaintiffs Stacey Adams and Jerry Saint
Vil have no interests antagonistic to those of the other Class Members, and
Plaintiffs have vigorously prosecuted this action to date. Plaintiffs are represented
by attorneys from the Southern Center for Human Rights, who have litigated
numerous class actions in the state and federal courts, and by attorneys from
Caplan Cobb LLP, who have extensive experience in complex litigation.
Plaintiffs, and their counsel, have fairly and adequately protected the interests of
the Settlement Class. The Court finds that the adequacy of representation
requirement of Rule 23(a)(4) is satisfied.

2.      Rule 23(b)

Plaintiffs must also satisfy one of the requirements of Rule 23(b).  Plaintiffs move for class certification under Rule 23(b)(3) which "allows the maintenance of a class action when 'the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  <u>Carriuolo</u>, 823 F.3d at 985 (quoting Fed. R. Civ. P. 23(b)(3)).

"[T]he focus of Rule 23(b)(3) is on the predominance of common questions."  <u>Amgen Inc. v. Connecticut Retirement Plans and Trust Funds</u>, 568 U.S. 455, 466 (2013) (emphasis omitted).  Common issues predominate "if they have a 'direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."  <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1270 (11th Cir. 2009); <u>see also</u> <u>Williams</u>, 568 F.3d at 1357 (noting common questions predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief.").  The Court must "take into account the claims, defenses, relevant facts, and applicable substantive law" in determining whether common question predominate.  <u>Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.</u>,

458 F. App'x 793, 794 (11th Cir. 2012) (quoting <u>Klay v. Humana, Inc.</u>, 382 F.3d 1241, 1254 (11th Cir. 2004)). Common issues may predominate over individualized ones "if those issues that are subject to generalized proof predominate over those that are subject to individualized proof." <u>Kubiak v. S.W. Cowboy, Inc.</u>, 2014 WL 2625181, at *18 (M.D. Fla. June 12, 2014).

In this case, common questions of law and fact predominate over individualized issues. Defendants supervised thousands of pay-only probationers sentenced by the Municipal Court of Atlanta and charged similar, if not identical, probation supervision fees to probationers. Plaintiffs assert that the imposition of and the collection of certain of these fees was unlawful and unconstitutional. If every Class Member brought an individual action, each would attempt to prove essentially the same facts and Defendants would generally assert the same defenses. Similarly, if the Court were to hold that the fees charged and collected were unauthorized and unlawful, that conclusion would establish Defendants' liability in all of the Class Members' cases. The Court finds the proposed class here is "sufficiently cohesive to warrant adjudication by representation." <u>See Amchem</u>, 521 U.S. at 623.

The second part of Rule 23(b)(3) requires that Plaintiffs establish that a class action is "superior to other available methods for fairly and efficiently adjudicating

the controversy." Fed. R. Civ. P. 23(b)(3). Factors bearing on this determination include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Id. In weighing the relative advantages of a class action, courts consider what is "realistically available to plaintiffs." Klay, 382 F.3d at 1269.

The proposed class action is a fair and superior method of adjudication because individual legal representation is unlikely due to class members' lack of resources and the modest damages involved. The "small recoveries" that would likely be available to potential plaintiffs "do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." Amchem, 521 U.S. at 617 (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th Cir. 1997)).

This class action is also an efficient and superior method of adjudication because the alternative—requiring each Class Member to adjudicate a separate claim—would be "repetitive, wasteful, and an extraordinary burden on the courts." Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 725 (11th Cir. 1987) (quoting Kennedy v. Tallant, 710 F.2d 711, 718 (11th Cir. 1983)). Concentrating this action in a single forum promotes efficiency as well as Class Members' interests. This

forum is appropriate because most of the Class Members reside in or near Atlanta, Georgia.

Having found that the requirements of Rule 23(a) and 23(b)(3) are satisfied, the Court grants the parties' motion to certify a Settlement Class. The Court certifies the Settlement Class as:

> Individuals who meet the following criteria: (1) the person was sentenced to "pay only" probation as defined by O.C.G.A. § 42-8-103 by the Municipal Court of Atlanta, Georgia on or after July 1, 2015; and (2) the person was subsequently charged and paid to Defendant Sentinel Offender Services, LLC at least one enrollment fee of $20 and subsequent supervision fees of at least $81 for a single sentencing event (defined as a single sentencing order whether said order references multiple cases or imposes consecutive sentences).

B.    <u>Appointment of Class Counsel</u>

Rule 23(g) of the Federal Rules of Civil Procedure provides that "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). Class counsel "must fairly and adequately represent the interests of the class" and, in appointing class counsel, the Court must consider:

> (i)    the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii)    counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii)    counsel's knowledge of the applicable law; and
>
> (iv)    the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv), (2), (4).

Plaintiffs are represented by attorneys from the Southern Center for Human Rights, a privately funded, non-profit organization with extensive experience in civil rights and class action litigation, and by attorneys from Caplan Cobb LLP, who have experience in complex litigation. ([25.1] at 12 n. 1). Plaintiffs' counsel have investigated the facts by, among other things, interviewing numerous witnesses and probationers, and reviewing hundreds of case files and thousands of documents. Plaintiffs' counsel also spent a substantial amount of time researching Plaintiffs' legal claims and procedural issues such as class certification. Plaintiffs' counsel have successfully prosecuted this action to obtain a reasonable settlement of the claims. Plaintiffs' counsel have also agreed to commit their resources to providing notice to the Class and administering the Settlement Agreement.

Having considered the Rule 23(g) factors for the appointment of class counsel, the Court concludes that counsel have significant experience in litigating similar cases, have performed substantial work in prosecuting this action to date, are well-versed in the law that applies to the claims asserted in this action, and have the necessary resources to devote to the prosecution of this action. The Court finds that the Southern Center for Human Rights, specifically attorneys Sarah Geraghty and Akiva Freidlin, and Caplan Cobb LLP, specifically attorneys Michael Caplan and Julia Stone, satisfy the requirements of Rule 23(g) and are qualified to serve as Co-Class Counsel.

C.     Preliminary Settlement Approval

Rule 23(e) of the Federal Rules of Civil Procedure requires parties to obtain Court approval of any class action settlement agreement.  The Court may approve the settlement "only after a hearing and on a finding that the settlement . . . is fair, reasonable, and adequate" and not the product of collusion.  Fed. R. Civ. P. 23(e)(2); Bennett v. Behring Corp., 737 F.2d 982, 986 (11th Cir. 1984).  "Approval is generally a two-step process in which a 'preliminary determination on the fairness, reasonableness, and adequacy of the proposed settlement terms' is reached."  Holman v. Student Loan Xpress, Inc., No. 8:08-CV-305-T23MAP, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009) (quoting David F. Herr, Annotated Manual for Complex Litigation § 21.632 (4th ed. 2008)).  The Eleventh Circuit has identified the following factors to evaluate whether a settlement agreement is fair, reasonable and adequate:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

Dikeman v. Progressive Express Ins. Co., 312 F. App'x 168, 171 (11th Cir. 2008) (quoting Bennett, 737 F.2d at 986).

In considering the Bennett factors, the Court first notes that there is no evidence of fraud or collusion influencing the parties reaching a settlement.  The

parties have stated that the Settlement Agreement was the product of good-faith, arm's-length negotiations and the Settlement Agreement was reached between experienced and qualified counsel with the assistance of an experienced and neutral mediator. The parties agree that there is uncertainty about how the merits of Plaintiffs' claims would ultimately be resolved given Defendant's legal and factual defenses to the Plaintiffs' claims.[2]

The range of individual recoveries under the proposed settlement is well within the range of the possible benefit and recovery should the case go to trial. If this case went to a trial and classwide liability were established, the Class Members might recover more or less than the Restitution Amount provided for in the Settlement Agreement. See, e.g., Gray ex rel. Alexander v. Bostic, 720 F.3d 887, 892 (11th Cir. 2013) (evaluating request for attorney's fees after award of nominal damages); cf. Carey v. Piphus, 435 U.S. 247, 266-67 (1978) (holding plaintiff could "recover nominal damages not to exceed one dollar" for violations of right to procedural due process). "If [defendant] prevails at trial, the class will be left with no remedy at all." Ault, 692 F.3d at 1218. In contrast, the Settlement Agreement provides for not only restitution of money paid (at $23 per sentencing incident for approximately 2,352 incidents), but additional damages of $30 per

---

[2]     Defendants deny that Plaintiffs or other probationers' rights were violated and contend that the fees charged and collected were authorized, lawful, and less than similar pay-only probation fees charged in other jurisdictions.

Class Member.  Thus, the total reimbursement/compensation to be paid to each

Class Member ($53) may be in excess of what each Class Member financially

incurred as a result of the Defendant's alleged improper collection of fees.  See,

e.g., Poertner v. Gillette Co., 618 F. App'x 624, 628 (11th Cir. 2015) (finding

settlement fair and reasonable where "the $6 that could be claimed [by certain class

members] exceeded the damages that an average class member would have

received if the class had prevailed at trial").  The payments called for by the

Settlement Agreement are within the range that would be fair, adequate and

reasonable.

The Court notes further that litigation of this case would be lengthy,

expensive, and uncertain.  Approval of the Settlement Agreement would eliminate

that uncertainty and avoid the time and expense necessary to litigate a case of this

magnitude.  At this stage, there is no apparent opposition to the Settlement

Agreement.  Nor is there any indication that Plaintiffs' claims have not been

sufficiently vetted to permit a comprehensive and fair settlement at this stage of the

proceedings.  Lipuma v. Am. Express Co., 406 F. Supp. 2d 1298, 1324 (S.D. Fla.

2005) ("The stage of the proceedings at which a settlement is achieved is evaluated

to ensure that Plaintiffs had access to sufficient information to adequately evaluate

the merits of the case and weigh the benefits of settlement against further

litigation.").

Upon consideration of the <u>Bennett</u> factors, the Court preliminarily approves the Settlement Agreement as a "fair, reasonable, and adequate" compromise of Plaintiffs' claims. The Court also preliminarily approves as reasonable payment to the Class Representatives as follows: Stacey Adams ($5,000.00) and Jerry Saint Vil ($5,000.00).

D.    <u>Notification of the Class</u>

Rule 23(e) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." The Court finds that the Parties have developed a process consistent with the notification requirements of Rule 23(e) and the Court approves the process. The Court also approves the proposed Advertisement attached to the Settlement Agreement as Appendix A ([25.1] at 46-52), the proposed Notice attached as Appendix B ([25.1] at 53-59), and the proposed Response Form attached as Appendix C ([25.1] at 60-63) with the deadline dates as provided below.

E.    <u>Scheduling of Fairness Hearing</u>

Rule 23(e)(2) requires the Court to hold a hearing to determine whether the proposed settlement is fair, reasonable, and adequate, and whether it should be approved by the Court. The Court will hold such a Final Fairness Hearing at the time and place provided below. Plaintiff shall file a motion for attorney's fees in

accordance with Rule 23(h) and as directed below to provide an adequate period for objection and consideration of the fee request at the Final Fairness Hearing.

## III.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the parties' Joint Motion for Conditional Certification of Settlement Class [21] is **DENIED** as **MOOT**.

**IT IS FURTHER ORDERED** that the parties' First Amended Joint Motion for Conditional Certification of Settlement Class [25] is **GRANTED**.  The Court conditionally certifies, for purposes of settlement only, a class consisting of 2,352 persons who meets the following criteria: (1) the person was sentenced to "pay only" probation as defined by O.C.G.A. § 42-8-103 by the Municipal Court of Atlanta, Georgia on or after July 1, 2015; and (2) the person was subsequently charged and paid to Defendant Sentinel Offender Services, LLC at least one enrollment fee of $20 and subsequent supervision fees of at least $81 for a single sentencing event (defined as a single sentencing order whether said order references multiple cases or imposes consecutive sentences).

**IT IS FURTHER ORDERED** that Plaintiffs Stacey Adams and Jerry Saint Vil are appointed Representatives for the Class.

**IT IS FURTHER ORDERED** that attorneys Sarah Geraghty and Akiva Freidlin of the Southern Center for Human Rights and Michael Caplan and Julia

Stone of Caplan Cobb LLP are appointed as Class Counsel.

**IT IS FURTHER ORDERED** that the proposed Settlement Agreement is preliminarily approved.

**IT IS FURTHER ORDERED** that the notice procedure proposed by the parties is approved.  Notice shall be provided in the following manner:

a. Defendants will publish the advertisement attached to the Settlement Agreement as Appendix A ("the Advertisement").  The Advertisement shall be published in the Fulton County Daily Report once per week for two weeks to begin by June 8, 2018.

b. On or before June 8, 2018, Plaintiffs' attorneys will mail the notice attached to the Settlement Agreement as Appendix B ("the Notice").  The Notice shall be sent by U.S. Mail and electronic mail (if available), to the individuals who are believed by the parties to be the members of the Class.  The Notice shall be mailed to the most recent address contained in the probation files maintained by Defendants.  If a Notice is returned with a forwarding address, Plaintiffs' attorneys shall mail a second Notice to the forwarding address provided or any other address obtained through investigation as potential forwarding addresses.

c. If a Notice is returned as undeliverable and without a forwarding address, Plaintiffs' attorneys will make reasonable efforts to contact each such

Class Member to determine a current address for the Class Member. If a current address is identified, Plaintiffs' attorneys shall mail a Notice to that address within 5 business days of receipt of the address.

d. Each Notice mailed in accordance with the above procedure will be accompanied by a copy of the Response Form attached to the Settlement Agreement as Appendix C. Copies of the Notice and the Response Form will also be made available electronically on the website for the Southern Center for Human Rights. Plaintiffs' attorneys will deliver a copy of the Response Form by U.S. Mail, hand delivery, or electronic mail to any individual who requests a copy of the form.

**IT IS FURTHER ORDERED** that the settlement shall be administered as follows:

a. Defendants shall pay $72,328.00 to attorneys for the Class within 23 days of the date of this order. Attorneys for the Class shall deposit the funds in a trust account pending final approval and distribution. If funds greater than this amount is required to pay all valid claims, Defendants shall deposit all additional funds necessary to pay all validly filed and cognizable claims.

b. Defendants will reimburse Plaintiffs' attorneys for the actual costs up to a maximum of $8,000.00 of publication, postage and copying associated with the notice procedure.

c. Members of the Class who wish to claim money owed to them under the Settlement Agreement must return a completed Response Form to Class Counsel by first-class mail, hand delivery, facsimile or electronic mail no later than October 5, 2018.

d. Members of the Class who wish to opt out of the Settlement Agreement must return a completed Response Form to Class Counsel by first-class mail, hand delivery, facsimile or electronic mail no later than October 5, 2018.

e. Members of the Class who wish to intervene in this case or object to the terms of the Settlement Agreement must file their appearance or objections with the Clerk of Court no later than October 5, 2018.

f. If a timely request to opt out of the Class is made by a person otherwise entitled to be included as a member of that Class, then the person opting out will be excluded from the Class, and the settlement agreement and any determinations and judgments concerning the agreement will not bind the excluded person.

g. All members of the Class who do not opt out in accordance with the terms of the settlement agreement and the notice provided to the Class Members will be bound by any and all determinations and judgments concerning the settlement agreement.

h. Class Members who object to the Settlement Agreement must file written objections with the Court no later than October 5, 2018. The written objection must state the full name and address of the objector, and must include: (1) a statement of each objection being made; (2) a detailed description of the legal authorities underlying each such objection; (3) a statement of whether the objector intends to appear at the Final Fairness Hearing; (4) a list of witnesses who the objector may call by live testimony, oral deposition testimony, or affidavit during the Final Fairness Hearing; and (5) a list of the exhibits that the objector may offer during the Final Fairness Hearing, along with copies of those exhibits. Any Class Member who does not file an objection within the time and in the manner described above and in the notice to Class Members will be forever barred from raising any objection to such matters in the event that the Settlement Agreement is approved by the Court.

i. Any member of the Class who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Fairness

Hearing, in accordance with the instructions in the notice and this Order, shall not be permitted to object to the Settlement Agreement at the Final Fairness Hearing, shall be barred from seeking review of the Settlement Agreement by appeal or otherwise, and shall be deemed to have waived forever any objections to the Settlement Agreement.

j.  All members of the Class, except those members who timely request to opt out of the Class, will be bound by all judgments in this action.

k.  If the Settlement Agreement is not granted final approval, the parties will be returned to their respective positions, as they existed immediately prior to reaching the Settlement Agreement.

l.  The Settlement Agreement and any and all negotiations, documents, and discussions associated with the Settlement Agreement, shall not be deemed an admission or evidence of any violation of law, the amount of any damages owed to any Class Member, the value of attorney services provided to the Plaintiffs or Class Members, or any other matter.

**IT IS FURTHER ORDERED** that the following deadlines shall apply:

a.  The parties shall provide notice to the Class within 30 days of this Order, and no later than June 8, 2018.

b. Each potential Class Member must submit a Response Form indicating the Class Member's intent to receive payment, or to opt out of the class, no later than October 5, 2018.

c. Class Members seeking to object to terms of the settlement agreement, or to intervene in the case, must do so no later than October 5, 2018.

d. The Court shall hold a Final Fairness Hearing at the United States Courthouse, 75 Ted Turner Drive, SW, Courtroom 1705, Atlanta, GA 30303-3309, at 9:30 a.m. on October 26, 2018.

e. Plaintiffs' counsel shall file a motion for attorney's fees in accordance with Fed. R. Civ. P. 23(h) on or before September 21, 2018. The fees requested shall not exceed $30,000 with the amount of fees ultimately awarded, if any, to be in the discretion of the Court.

**SO ORDERED** this 10th day of May, 2018.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE